UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESMELING L. BAHENA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>D. ROHRDANZ, et al.,<br><br>　　　　　Defendants. | Case No. 1:20-cv-00618-SKO (PC)<br><br>**ORDER DIRECTING PLAINTIFF TO FILE A FIRST AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS DESIRE TO PROCEED ONLY ON CLAIMS FOUND COGNIZABLE**<br><br>(Doc. 1)<br><br>21-DAY DEADLINE |

Plaintiff Esmeling L. Bahena alleges the defendants were deliberately indifferent to his serious medical needs. (Doc. 1.) The Court finds that Plaintiff states cognizable deliberate indifference claims against Defendants Rohrdanz and Manhas but not the remaining defendants. Therefore, the Court directs Plaintiff to file a first amended complaint curing the deficiencies identified in this order or, in the alternative, notify the Court that he wishes to proceed only on the claims founds cognizable and to dismiss the remaining claims and defendants.

**I.　　SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks and citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks and citation omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

## III. DISCUSSION

### A. Factual Allegations[1]

Plaintiff's claims stem from events that occurred at Kern Valley State Prison (KVSP). (Doc. 1 at 1.) On February 4, 2019, Plaintiff was "beaten up … [and] shot with an institutional … block gun twice." (*Id.* at 3.) Plaintiff saw Nurse Palma at the "yard clinic" and requested "urgent care/medical treatment" for his injuries. (*Id.*) Palma stated that she did not believe he needed urgent care, but that she would call "TTA (treatment admin)." (*Id.*) One hour later, Palma returned, but only provided Plaintiff gauze and an ice pack, even though he was bleeding. (*Id.*)

Palma then sent Plaintiff to TTA, where he had an X-ray performed. (*Id.*) Dr. Rohrdanz received the results of the X-ray, which revealed that Plaintiff had a fractured jaw. (*Id.* at 7, 9.) The X-ray technician recommended "outpatient CT [and] further med-care." (*Id.* at 10.) Plaintiff "pleaded" to be sent to an outside hospital for treatment, but Dr. Rohrdanz refused to provide further medical care. (*Id.* at 9.) Rohrdanz instead sent Plaintiff back to his housing unit. (*Id.*)

After Plaintiff left TTA, Palma provided him with Tylenol and "toilet tissue," and she changed his gauze. (*Id.* at 3.) She stated that "nothing[ is] wrong …, it's just a little trauma." (*Id.* at 4.) She informed Plaintiff that he would be seen by a doctor within 5 days. (*Id.*) Plaintiff was then returned to his housing unit. (*Id.*)

---

[1] For screening purposes, the Court accepts Plaintiff's factual allegations as true. *See Iqbal*, 556 U.S. at 678

On February 5, 2019, Plaintiff's condition had worsened; his face was swollen, and his left eye was "completely shut" and bruised. (*Id.*) He then "went 'man down'" to alert staff and ensure he would receive medical attention. (*Id.*) Nurse Teresiah responded to Plaintiff's housing unit and provided him with more ice packs and Tylenol, and she advised Plaintiff to wait three days to see a doctor. (*Id.* at 6.) Over the following days, Plaintiff repeatedly "cried for appropriate … medical treatment." (*Id.*)

On February 8, 2019, while in the "institutional pill line," Plaintiff fainted on the patio. (*Id.*) Dr. Rohrdanz responded, and Plaintiff explained that he was in serious pain and that the vision in his left eye was "blurred." (*Id.* at 6-7.) Plaintiff was sent to TTA. (*Id.* at 7.)

While at TTA, a nurse told Plaintiff that he should have been sent to an outside hospital for treatment. (*Id.*) Plaintiff was then sent to Adventist Hospital in Bakersfield. (*Id.*) On February 9, 2019, an X-ray conducted at Adventist confirmed that Plaintiff had a fractured jaw. (*Id.*) Doctors recommended that Plaintiff see a surgeon and an ear, nose, and throat (ENT) specialist and that he receive a soft-food diet and morphine. (*Id.*) Plaintiff never saw an ENT specialist or a surgeon. (*See id.* at 7, 10.)

When Plaintiff returned to KVSP, Dr. Rohrdanz denied him the soft-food diet, saying it was "unnecessary" and that Plaintiff is "not a baby," despite Plaintiff's complaints that chewing caused him severe pain. (*Id.* at 10.) Plaintiff returned to Adventist Hospital on February 24, 2019, due to the pain. (*Id.*) There, a doctor told Plaintiff that KVSP doctors "waited to[o] long," which caused "blood clots in [his] facial area w/broken pieces of bone." (*Id.*) It was again recommended that Plaintiff be seen by a surgeon, as well as a neurologist, but he never saw either. (*Id.* at 10, 12.)

In June of 2019, Plaintiff again visited the KVSP clinic. (*Id.* at 14.) He continued to experience pain and his jaw remained "unfixed," and it was still difficult for him to chew solid foods. (*Id.*) Plaintiff states Dr. Manhas was "put on notice" of his condition and the Adventist doctor's recommendation that he see an ENT specialist, given notes left by the doctor and Plaintiff's constant complaints. (*Id.*) Dr. Manhas provided Plaintiff with ibuprofen, but he refused to prescribe the soft-food diet and did not refer Plaintiff to an ENT specialist. (*Id.* at 14-15.)

Plaintiff's jaw is now permanently "damage[d]." (*Id.* at 15.) He is unable to chew food without pain, and he suffers from chronic headaches, anxiety, and sleeplessness. (*Id.* at 3, 6, 9, 14.) He alleges that Defendants' deliberate indifference caused his injuries. (*Id.*)

### B. Claims for Relief

"Prison officials violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (internal quotation marks and citations omitted). "A prison official is deliberately indifferent to that need if he 'knows of and disregards an excessive risk to inmate health.'" *Id.* at 1082 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The test for deliberate indifference is thus two-pronged and has objective and subjective components. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). To establish such a claim, a prisoner must first "show a serious medical need by demonstrating that failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Id.* (internal quotation marks and citation omitted).

As to the first, objective prong, "[i]ndications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted).

As to the second, subjective prong, deliberate indifference "describes a state of mind more blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (internal quotation

marks and citation omitted). Deliberate indifference exists where a prison official "knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing, "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citation omitted). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but [he] 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (internal quotation marks and citation omitted).

Plaintiff's injury to his jaw satisfies the first, objective prong. The injury is clearly one that a reasonable patient would find worthy of treatment, and Plaintiff alleges that it causes him significant, chronic pain and affects his ability to chew. (Doc. 1 at 3, 6, 9, 14.)

Plaintiff's allegations fail to satisfy the second, subjective prong with respect to Nurses Palma and Teresiah. According to Plaintiff, soon after he was injured, Palma stated she did not believe he needed urgent care, but she nevertheless sent him to "treatment admin" where he received an X-ray and visited a doctor. (Doc. 1 at 3, 7, 9.) With respect to Teresiah, Plaintiff alleges the nurse responded to his housing unit after he "went man down." (*Id.* at 4, 6.) Plaintiff states that his face was swollen and his eye was bruised, and that Teresiah responded by provided him ice packs and Tylenol. (*Id.*) She told Plaintiff, "you['re] okay it's not that bad," and advised him that he would see a doctor in 3 days. (*Id.*) These allegations do not show that either Palma or Teresiah knew of a substantial risk of serious harm to Plaintiff or that they failed to take reasonable measure to abate such a risk. Plaintiff therefore fails to state a cognizable deliberate indifference claim against the nurses.

6

Plaintiff states cognizable claims against Drs. Rohrdanz and Manhas. Plaintiff alleges that Dr. Rohrdanz knew of his fractured jaw, yet refused to provide him treatment for the fracture (or to send him to an outside hospital for treatment) until he fainted. (Doc. 1 at 6-7, 9.) Plaintiff also alleges that, after doctors at Adventist Hospital recommended that he be seen by a surgeon and an ENT specialist and provided a soft-food diet, Rohrdanz denied the diet and refused to refer him to a surgeon or specialist, despite Plaintiff' complaints regarding his significant pain when he chewed. (*Id.* at 7, 10, 12.) With respect to Dr. Manhas, Plaintiff alleges the doctor also knew of his injured jaw and chronic pain, as well as the recommendation that he receive a soft-food diet and be seen by an ENT specialist, yet he too refused to prescribe the diet or refer Plaintiff to a specialist. (*Id.* at 14-15.) Plaintiff alleges the defendants' actions or inactions caused his injury and chronic pain to become permanent. (*Id.* at 3, 6, 9, 14.)

Although mere differences of medical opinion do not, by themselves, establish deliberate indifference, *Toguchi*, 391 F.3d at 1059-60, Plaintiff's allegations with respect to Drs. Rohrdanz and Manhas are sufficient to show purposeful failures to adequately respond to his medical needs or pain as well as harm caused by the indifference. Plaintiff thus states cognizable deliberate indifference claims against the doctors.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff states cognizable deliberate indifference claims against Defendants Rohrdanz and Manhas, but he does not state cognizable claims against the remaining defendants. **Within 21 days** of the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified herein or, in the alternative, file a notice that that he wishes to proceed only on the claims found cognizable. If Plaintiff no longer wishes to pursue this action, he may file a notice of voluntary dismissal. If he needs an extension of time to comply with this order, he shall file a motion seeking an extension **no later than 21 days** from the date of service of this order.

Plaintiff is informed that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Thus, the amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. The

Court provides Plaintiff with an opportunity to amend his complaint to cure the deficiencies identified in this order. However, Plaintiff may not change the nature of this suit by adding unrelated claims in an amended complaint.

Accordingly, the Court **ORDERS**:

1. Plaintiff is **GRANTED** leave to file a first amended complaint;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form; and,
3. **Within 21 days** of the date of service of this order, Plaintiff must file **one of the following three items**:
   a. a first amended complaint curing the deficiencies identified in this order, or
   b. a notice that he does not wish to file a first amended complaint and instead wishes to (1) proceed only on his deliberate indifference claims against Defendants Rohrdanz and Manhas and (2) dismiss the remaining claims and defendants, or
   c. a notice of voluntary dismissal of this entire case.

**If Plaintiff fails to comply with this order, the Court will recommend that this action proceed only on the claims found cognizable herein and that all other claims and defendants be dismissed with prejudice.**

IT IS SO ORDERED.

Dated:   **September 23, 2020**                    /s/ *Sheila K. Oberto*
                                                  UNITED STATES MAGISTRATE JUDGE